IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ALBERT ALLEN,<br><br>     **Plaintiff,**<br><br>v.<br><br>WEXFORD HEALTH SOURCES, INC.,<br>ANGELA CRAIN,<br>JILL CRANE,<br>JANE DOE NURSE,<br>WILLS,<br>HUGHES,<br>PRITZKER,<br>CONNIE DOLCE,<br>MEYER,<br>BABICH,<br>DEARMOND, and<br>PIERCE,<br><br>     **Defendants.** | Case No. 24-cv-02122-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

  Plaintiff Albert Allen, an inmate of the Illinois Department of Corrections ("IDOC"), filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

### THE COMPLAINT

  In the Complaint, Plaintiff alleges that he began experiencing stomach pain in 2019. (Doc. 1, p. 6). In 2020, the pain increased and became excruciating. The pain was sharp and would cause him to "double over." Plaintiff put in several sick call slips and was seen by Dr. Siddiqui sometime

in January 2020. Following the appointment with Dr. Siddiqui, Plaintiff was sent to Chester Memorial Hospital on January 21, 2020, and diagnosed with an umbilical hernia. (*Id.* at p. 6, 45). The provider at the hospital told Plaintiff that the hernia could be repaired but that Menard Correctional Center (Menard) would need to arrange for a surgical consultation so that surgery could be scheduled. (*Id.* at p. 7).

Upon his return to Menard, Plaintiff asserts that he informed a nurse that he was in pain and that it hurt to have bowel movements, sneeze, and cough. (Doc. 1, p. 7). He was told to "man up and deal with the pain." (*Id.*). Plaintiff was not scheduled for a consultation or surgery. He claims that he was denied surgery because of a Wexford Health Sources, Inc. (Wexford) policy prohibiting hernia repair surgeries until the hernia becomes "unable to be pushed back in or strangulated" in order to save money. (*Id.* at p. 8, 23).

Plaintiff filed a grievance in February 2020, complaining about not receiving treatment for his hernia and associated pain due to the Wexford cost-saving policy. (Doc. 1, p. 8). He did not receive a response to the grievance. Plaintiff asserts that he was instructed by a nurse not to file anymore grievances about the healthcare unit being understaffed and being denied treatment for his hernia because it "makes it seem like he's claiming that the staff is denying him medical care." The nurse told Plaintiff that she was going to "get him seen to hopefully get him the surgery." Plaintiff did not receive the surgery or follow-up care, and he did not file anymore grievances because he was "scared." (*Id.*).

Three years passed. During this time, Plaintiff's pain was constant, and the hernia continued "to push and bulge out." (Doc. 1, p. 10). On June 25, 2023, Plaintiff discovered blood in his urine. (*Id.* at p. 9, 21). Plaintiff fell to the floor in his cell but due to understaffing, no one was around to assist him. After twenty or thirty minutes, a cell house inmate worker came and saw

Plaintiff lying on the floor and the blood in and around the toilet. The worker called for help, and Plaintiff was taken to the healthcare unit. Plaintiff states that due to understaffing, he was treated by Jane Doe Nurse,[1] rather than a medical doctor or a nurse practitioner. (*Id.* at p. 9, 15-16). Jane Doe Nurse gave Plaintiff Tylenol and sent him back to the cell house without any diagnostic testing. (*Id.*). Because the nurse was not a doctor, he had to wait days for medication. (*Id.* at p. 16).

The following day, June 26, 2023, Plaintiff was seen at the healthcare unit by Nurse Practitioner Crane. (Doc. 1, p. 20, 21, 23, 33). Crane told him that the blood in his urine was "more than likely caused by him passing a kidney stone." (*Id.*). Plaintiff asserts that Crane did not physically examine him or send him for further testing, "she guessed." (*Id.* at p. 21). Despite telling both Jane Doe Nurse and Nurse Practitioner Crane about his hernia, that he was in excruciating pain, and that he was urinating blood, Plaintiff was sent back to his cell house. He was diagnosed has having either passed a kidney stone or a urinary tract infection. (*Id.* at p. 21-22).

Plaintiff was then called back weekly to the healthcare unit to have his urine checked for blood. (Doc. 1, p. 23). At each appointment, Nurse Practitioner Crane and Healthcare Unit Administrator Angela Crain refused to address Plaintiff's hernia. (*Id.* at p. 22-23). Jane Doe Nurse and Crane called Dr. Meyer and notified him of Plaintiff's medical issue concerning his hernia and pain. (*Id.* at p. 24).

Plaintiff wrote letters to Warden Wills, Director Hughes, and Governor Pritzker on June 28, 2023, informing them that due to staffing shortages he was not receiving the "basic necessities of life," including out of cell exercise and medical care. (Doc. 1, p. 16). On August 13, 2023, Plaintiff again wrote Wills, Hughes, and Pritzker complaining that nurses were "running the HCU and making diagnosis in direct violation of the Wexford manual." Plaintiff did not receive a

---

[1] Plaintiff also refers to this individual "Nurse-Jane Doe #1," "Jane Doe #1," and "Jane Doe-Nurse." (Doc. 1, p. 9, 15). For clarity, the Court will refer to this person as Jane Doe Nurse throughout this Order.

response from his letters. (*Id.*).

Plaintiff wrote a grievance on July 10, 2023, about his untreated hernia. (Doc. 1, p. 24). The grievance was deemed an emergency, but Healthcare Unit Administrator Crain did not reply until October 26, 2023, and the grievance was not returned to Plaintiff until November 6, 2023. (*Id.* at p. 24-25). Plaintiff still did not receive surgery and so he submitted another sick call request. Plaintiff finally received hernia surgery sometime after November 6, 2023. (*Id.* at p. 26).

## PRELIMINARY DISMISSAL

To the extent Plaintiff is attempting to bring an Eighth Amendment claim regarding inadequate care of his medical condition which caused blood to appear in his urine, such claim is dismissed. To state a claim for deliberate indifference, an inmate must put forward facts implicating both an objective and subjective element, "namely that: (1) an objectively serious medical need was deprived: and (2) the official knew that the risk of injury was substantial but nevertheless failed to take reasonable measures to prevent it." *See Chapman v. Keltner*, 241 F.3d 842 845 (7th Cir. 2001) (citing *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999)). *See also Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). When determining whether prison officials have been deliberately indifferent to an inmate's serious medical needs, courts should consider the totality of the received medical care. *See Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000).

Given the totality of the response to Plaintiff's condition by Defendants, as described by Plaintiff and his exhibits,[2] the Court cannot plausibly infer deliberate indifference. Plaintiff discovered blood in his urine on June 25, 2023. (Doc. 1, p. 9). Within thirty minutes, he was found

---

[2] The Federal Rules of Civil Procedure provide that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." FED. R. CIV. P. 10(c). *See Williamson v. Curran*, 714 F. 3d 432, 436 (7th Cir. 2013).

on the floor by a fellow inmate[3] and taken to the healthcare unit. The Jane Doe Nurse telephoned Dr. Meyer. Dr. Meyer ordered UA with C&S (urine analysis) and Bactrim DS (an antibiotic), and he also instructed for Plaintiff to be seen by the nurse practitioner in the morning. (*Id.* at p. 33, 54). Jane Doe Nurse gave Plaintiff Tylenol for his pain before he left the healthcare unit. (*Id.* at p. 21). Plaintiff states that the Tylenol did not address his pain, but the next day, Plaintiff saw Nurse Practitioner Crane.[4] She issued him a medical permit for a "medical lay-in for 3 days," and in addition to Dr. Meyer's instructions, she ordered a "CBC/CMP." (Doc. 1, p. 33, 54-55, 82). Urine analyses were conducted on June 26, 2023, and July 3, 11, 18, and 25, 2023. (*Id.* at p. 33, 58-69). The results showed that his urine was "light yellow and clear. Urine culture no growth." (*Id.* at p. 33). Plaintiff does not allege further complaints of ongoing issues regarding urinary symptoms. He simply takes issue with the fact that he was not physically examined by a doctor on June 25 or sent immediately for additional diagnostic testing upon discovering blood in his urine. (*Id.* at p. 21-22). Plaintiff, however, is not entitled to "the best care possible," and a "mere disagreement" with the course of treatment chosen by Dr. Meyer and Nurse Practitioner Crane does not establish an Eighth Amendment violation. *See Forbes v. Edgar,* 112 F. 3d 262, 267 (7th Cir. 1997); *Greeno v. Daly,* 414 F. 3d 645, 653 (7th Cir. 2005). Nor has Plaintiff provide sufficient facts for the Court to reasonably infer that understaffing of the healthcare unit resulted in constitutionally inadequate care for his urinary issues. (*See* Doc. 1, p. 15-16). Accordingly, Plaintiff has failed to state a deliberate indifference claim against any of the named defendants regarding treatment of his condition that caused blood in his urine.

---

[3] It is not clear why Plaintiff "fell down on the floor." (Doc. 1, p. 9).
[4] Plaintiff states that Nurse Practitioner Crane did not address the pain caused by his hernia but does not assert any allegations regarding untreated pain for his urinary issues. The medical record from the appointment indicate that Plaintiff stated, "My pee is better today [and] I feel better too!" (Doc. 1, p. 54).

### DISCUSSION

Based on Plaintiff's allegations and his articulation of his claims, the Court designates the following counts:

**Count 1:** Eighth Amendment claim against Wexford, Wills, Hughes, Pritzker, Angela Crain, and Dolce for maintaining a policy of understaffing the healthcare units within the Illinois Department of Corrections, including at Menard, resulting in inadequate medical care for Plaintiff's hernia and associated pain.

**Count 2:** Eighth Amendment claim against Wexford, Angela Crain, Jill Crane, Jane Doe Nurse, Dr. Meyer, Dr. Babich, Wills, Hughes, Pritzker, Pierce, Dolce, and Dearmond for deliberate indifference to Plaintiff's serious medical need, a hernia and associated pain.

**Count 3:** State law claim against Defendants for intentional infliction of emotional distress.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[5] pleading standard.**

### Count 1

The Court finds that Plaintiff's allegations regarding understaffing are conclusory, and he will not be able to proceed on his Eighth Amendment claim based on this theory of relief. Plaintiff does not adequately allege that the understaffing caused the harm he complains of, namely delayed and denied care for his hernia and associated pain. Plaintiff states that he began experiencing pains in his stomach in 2019 but was not seen by medical staff until "around January 2020." (Doc. 1, p. 6). He complains that several of his sick call requests were cancelled because of an insufficient number of medical staff and at one point a nurse told him she was the only one on duty. (*Id.* at p.

---

[5] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

13). He also states that his sick call requests were canceled due to facility lockdowns. (*Id.* at p. 14). Plaintiff asserts, however, that he did not notify staff of his pain until 2020. And despite the cancelation of several of his sick call requests due to understaffing and lockdowns, he was seen at Menard by Dr. Siddiqui in January and then sent to Chester Memorial Hospital for an appointment regarding abdominal pain on January 21, 2020. (*Id.* at p. 6, 38). Thus, in a matter of a few weeks, he submitted sick call requests, was seen by an onsite doctor, and sent for an outside medical appointment. These facts do not allow the Court to plausibly infer that Plaintiff's care was unconstitutionally delayed due to understaffing at this time.

  Plaintiff's Complaint is void of allegations regarding his attempts to seek care for his hernia and associated pain from February 2020 until June 15, 2023, when he discovered blood in his urine. He does not attribute lack of care during this time to understaffing but generally states that because Wexford does not have an updated medical filing system, medical staff are unable to keep track of needed follow-up appointments or prescribed treatments. (Doc. 1, p. 10). He also claims that he "had to sit in pain for (3) years due to [this] Wexford policy to not do a hernia surgery until the hernia intestines were bulging out of [his] stomach wall." (*Id.* at p. 7, 18, 23).

  After alerting medical staff on June 25 and 26, 2023, that he had a hernia and it was causing him pain, he states that he was forced to submit a sick call request as part of Wexford's "deliberate delay tactic," and he was eventually seen on July 25, 2023. (Doc. 1, p. 24). He then had to again file sick call slips when he had questions about why he hadn't been scheduled for surgery. (*Id.* at p. 25). At some point, he was seen by Nurse Practitioner Crane, Dearmond, Dr. Meyer, and Dr. Babich, who all continued to ineffectively treat Plaintiff's pain with Tylenol. (*Id.* at p. 26-27). He eventually received hernia surgery at the end of 2023. These allegations are not sufficient for the Court to plausibly infer that the delay and denial of care from June 2023 until his surgery was

caused by an insufficient number of staff.

Because Plaintiff's allegations that his injury was caused by understaffing are conclusory and inadequately supported by his pleaded facts, Count 1 is dismissed without prejudice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (finding that a complaint must describe "more than a sheer possibility that a defendant has acted unlawfully"); *Bell Atlantic Corp.*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

**Count 2**

Although, the exact dates for when Plaintiff was treated and/or interacted with the medical providers Jill Crain, Dr. Meyer, Dr. Babich, and Dearmond are not entirely clear, Plaintiff has pled sufficient facts for the Court to infer that they knew he had a hernia that had gone untreated for three years and failed to provide him adequate medical care for his hernia and pain.

Count 2 will also proceed against Wexford for maintaining a policy of prohibiting hernia repair surgeries for inmates unless the hernia is no longer reducible or strangulated in order to save money. Count 2 will also proceed against Wexford for policies and practices, or lack thereof, regarding poor record keeping, which prevented Plaintiff from receiving follow-up care after his diagnosis of a hernia in January 2020. (*See* Doc. 1, p. 10).

Count 2 will proceed against Warden Wills, Director Hughes, and Governor Pritzker. Plaintiff claims that these upper-level officials have been turning a blind eye to the Wexford policy of prohibiting hernia repair surgery unless the hernia is no longer reducible or strangulated resulting in inmates, including himself, not receiving needed and timely medical care. (Doc. 1, p. 10). In light of the letters written by Plaintiff on June 28 and August 13, 2023, to these Defendants, and the number of previous lawsuits in this Circuit that have resulted from Wexford's medical guidelines concerning hernia surgeries, it is plausible to infer the Wills, Hughes, and Pritzker were

on notice of the policy or practice of prohibiting hernia surgery unless the hernia is not reducible or strangulated and that they disregarded the impact on inmates' rights, including Plaintiff's, to receive constitutionally adequate medical care. *See e.g. Maya v. Wexford Health Sources, Inc.,* No. 17-cv-00546-NJR, 2020 WL 5517465, at *13 (S.D. Ill. Sept. 14, 2020) (citations omitted); *Williams v. Wexford Health Sources, Inc.,* No. 17-cv-05076, 2020 WL 2767579, at *6 (N.D. Ill. May 28, 2020). *See also Gonzalez v. Feinerman,* 663 F. 3d 311 (7th Cir. 2011).

Count 2 will be dismissed as to Warden Wills, however, and as to Grievance Officer Pierce, to the extent Plaintiff is attempting to hold them liable solely based on the delayed response he received to his emergency grievance dated July 10, 2023. (*See* Doc. 1, p. 24-25). Defendants cannot be liable simply for mishandling a grievance. *See George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011).

Count 2 is dismissed as to Healthcare Unit Administrator Angela Crain and Connie Dolce, the nursing staff supervisor. Plaintiff's claims against these two Defendants cannot support an Eighth Amendment claim of deliberate indifference. Plaintiff alleges that they, along with Defendants Jill Crane and Dr. Meyer, "helped to enforce the Wexford policy for not giving or putting guys in for hernia surgery until the hernia becomes unable to be pushed back in or strangulated" and "refused to address [his] hernia" causing him to suffer. (Doc. 1, p. 22-23). These assertions are conclusory and not supported by any facts alleged in the Complaint. Other than being in supervisory positions, Plaintiff does not describe Crain or Dolce's conduct and their personal knowledge and involvement in his care. *See Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014) ("[I]ndividual liability under § 1983 requires personal involvement in the alleged constitutional deprivation").

Furthermore, as stated above, Crain cannot be held liable because she responded to

Plaintiff's grievance and did so months after it was submitted. The grievance response submitted with Plaintiff's Complaint, notably, does not allow the Court to infer that Crain turned a blind-eye to Plaintiff's hernia and his pain once she reviewed the grievance on October 25, 2023. She notes that Plaintiff was seen by a nurse on July 25, 2023, for his hernia with complaints of sharp pain. (Doc. 1, p. 33). Plaintiff was referred to a nurse practitioner, who saw Plaintiff on August 8, 2023, and referred him for an ultrasound and a general surgeon for possible repair of the umbilical hernia. The ultrasound was completed on September 15, 2023, and Plaintiff was scheduled to see the general surgeon. Crain notes that she requested for him to be seen by a nurse the following day, October 26, 2023, and that he has not submitted a sick call request since July 25, 2023. (*Id.*). Accordingly, Count 2 is dismissed as to Crain and Dolce.

Finally, Count 2 is dismissed as to Jane Doe Nurse. According to Plaintiff's Complaint and exhibits, he had a single interaction with Jane Doe Nurse on June 25, 2023, and her conduct as described does not amount to deliberate indifference. *See Klebanowski v. Sheahan*, 540 F. 3d 633, 639-40 (7th Cir. 2008) (deliberate indifference requires actions or omissions akin to criminal recklessness). On June 25, Jane Doe Nurse telephoned Dr. Meyer, informed him of Plaintiff's urinary symptoms and hernia and pain. She gave Plaintiff Tylenol, and pursuant to Dr. Meyer's orders, scheduled Plaintiff with the nurse practitioner the following morning and issued him Bactrim.[6] (Doc. 1, p. 24, 54). *See Gutierrez v. Peters,* 111 F.3d 1364, 1374 (7th Cir.1997); *Owens v. Duncan*, 788 F. App'x 371, 374 (7th Cir. 2019) (a single interaction with staff at sick call did not amount to deliberate indifference). He does not allege facts that Jane Doe Nurse continued to treat Plaintiff or disregarding ongoing complaints of pain and lack of care. Thus, he has failed to

---

[6] When Plaintiff received the antibiotic is unclear. Plaintiff states that his medication was delayed for "days," but the medical records indicate he was given a ten-day supply "from stock." (Doc. 1, p. 16, 54). Regardless of when Plaintiff received the antibiotic, Jane Doe Nurse's conduct as pled does not amount to the high standard required for an Eighth Amendment violation.

state a claim of deliberated indifference as to Jane Doe Nurse.

### Count 3

Under Illinois law, a plaintiff claiming intentional infliction of emotional distress must demonstrate that (1) the defendant "engaged in extreme and outrageous conduct;" 2) the defendant either intended to inflict severe emotional distress "or knew there was a high probability that [his] conduct would cause severe emotional distress;" and 3) the defendant's "conduct in fact caused severe emotional distress." *McGreal v. Vill. Orland Park*, 850 F.3d 308, 315 (7th Cir. 2017) (internal quotations omitted).

Plaintiff asserts that Defendants' actions were so "malicious and deliberate that they had to know that if they denied Plaintiff access to medical care for his hernia…that there can and will be pain." (Doc. 1, p. 19). Because he was deliberately denied medical care, Defendants "intentionally subjected [him] to emotional distress…that caused him to suffer so severely that it left him in pain from 2020 until at least 2023 November." (*Id.* at p. 28).

These blanket assertions do not describe any conduct on the part of individual defendants that was truly extreme and outrageous. There is nothing in the Complaint from which the Court can infer that Defendants acted with the intent or knowledge that their actions or omissions would result in severe emotional distress to Plaintiff. Count 3 is dismissed.

### DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** is **DISMISSED without prejudice**. **COUNT 2** will proceed against Wexford, Jill Crane, Wills, Hughes, Pritzker, Meyer, Babich, and Dearmond and is **DISMISSED** as to Angela Crain, Connie Dolce, Jane Doe Nurse, and Pierce. **COUNT 3** is **DISMISSED without prejudice**. Because there are no surviving claims against Angela Crain, Jane Doe Nurse,

Dolce, and Pierce, the Clerk of Court **SHALL TERMINATE** these individuals as parties on the docket.

The Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court **SHALL** prepare for Wexford, Jill Crane, Wills, Hughes, Pritzker, Meyer, Babich, and Dearmond the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, the Defendants need only to respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk

of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: January 8, 2025**

    *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**

NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.